McCALEB, Justice
(dissenting).
I agree that Section 3 of Article 14 of the 'Constitution is pertinent to a determination ■of the constitutionality of Act 170 of 1952 hut I do not subscribe to the holding that the statute is violative of that constitutional provision. Indeed, I think the statute conforms to both the letter and spirit of the provisions of Section 3 of Article 14.
Article 14 of the Constitution is entitled ■“Parochial and Municipal Affairs” and the first five sections thereof deal with the creation of parishes, their organization, dissolution and merger and the effects resulting therefrom. Section 1 grants to the Legislature the right to establish and organize new parishes under the conditions therein specified. Section 2 provides the manner in which the Legislature may change parish lines or remove parish seats, it being stipulated that, before such changes are effective, they must be approved by the people of the parishes involved. Section 3, with which we are concerned in this case, directs the Legislature to provide optional plans for the organization of parochial government and grants to any parish the right to change from one plan to another, if a majority of the electors approve the change. Section 4 declares that the Legislature may dissolve a parish, or merge it into a contiguous parish, when approved by two-thirds of the electors of the parish proposed to be dissolved and by a majority of the electors of the parish into which the .dissolved parish is proposed to become incorporated, in the case of merger. Section 5 provides for the adjustment of property, assets and debts and liabilities in the event of merger.
Thus, it is seen that the creation, organization and change of parish government is specifically vested in the legislative branch of government save only that, whatever is done by that body in the change of parochial government already established or in the dissolution of parishes or their merger, must be approved by a vote of the electors in the area to be affected. This is the only limitation upon the effectiveness of legislative action insofar as concerns any change in parish governments established at the time the Constitution was adopted and evinces, clearly and simply, the design of the framers of the Constitution that local self-government or home rule be preserved. An examination of the provisions of Section 3 of Article 14 of the Constitution demonstrates that this is so. The Section reads:
“The Legislature shall provide optional plans for the organization of parochial government, and any parish *809 may change from one plan, so prescribed, to another, when authorized by a majority of the electors voting at an election held for such purposes”.
It is plain, from the language above quoted, that no restriction is placed upon legislative action in adopting optional plans for the organization or reorganization of parochial government, other than that the plans may not become effective in any parish without approval of the people to be affected thereby. Actually, then, the real limitation is on the parishes — that is, a parish may not change from the organizational ' plan, under which it is operating, “to another” plan prescribed by the Legislature unless “authorized by a majority of the electors voting at an election held for such purposes”. Yet, the majority conclude that there is some sort of limitation which forbids the Legislature from providing optional plans of government affecting only one parish and that any plan of government enacted must be general and uniform so that every parish would have the opportunity of adopting it.
It is difficult for me to perceive the basis upon which this conclusion is reached. Certainly, there is no specific language in Section 3 which could sustain the majority view. The first clause states that “The Legislature shall provide optional plans" for the organization of parochial government, * * * This is a command to the Legislature to make available to parishes optional plans of government;- it does not require that the plans be uniform nor does it state that any plans that are enacted must apply equally to every parish. And the second clause reading “and any parish may change from one plan, so prescribed, to another” does not in anywise restrict legislative action. Still, the majority seize upon this clause as unquestionably meaning that the optional plans prescribed by the Legislature must be made available to all parishes.
I think that such an interpretation is strained. Since the letter of Section 3 of .Article 14 does not provide any such limitation, it is evident that the majority feel that the language used necessarily implies uniform optional legislation. But such implication does not appear to me to be logical as it is difficult to perceive any good reason to suppose that the framers of the Constitution intended to withhold from the Legislature the right to pass laws for the organization or re-organization of government of a particular parish as long as the people of that parish voice their approval of the law or the change.
In my view, Act 170 of 1952 is in conformity with Section 3 of Article 14. By that enactment, the Legislature simply provided another plan of government for the Parish of Jefferson, giving the parish the right to “change from one plan, so prescribed,” (the police jury plan under which it was organized) “to another,” (the plan setfprth'iri'Act 170 óf 1952) providing, the *811 change was authorized by “a majority of the electors voting at an election held for such purpose”.
Finally, the majority conclusion results in the unseemly consequence that, hereafter, any parish, having special local problems which can only be adequately solved by a particular form of government, will be required to submit a constitutional amendment,[1] such as was proposed and adopted for East Baton Rouge Parish in 1946.[2] This sort of constitutional amendment performs no useful function to the State at large and serves only to further clutter our organic law with legislation pertaining solely to local affairs.
I respectfully dissent.

. For it appears to me to be eminently impractical and superfluous to require the Legislature, in response to the needs of one particular parish, to provide optional plans of government available to every other parish. Such a requirement is unrealistic in that it would seem to presuppose that the problems of one parish, regardless of the political exigencies dictated by its location, population, economic activity, etc., are common to all the other parishes of the State.

. It became Section 3(a) of Article 14 of the Constitution.